UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAMMY F.-V.,

             Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.
_____

**DECISION AND ORDER**

21-CV-520S

1.     Plaintiff Tammy F.-V.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2.     Plaintiff protectively filed her applications with the Social Security Administration on August 14, 2018.  Plaintiff alleged disability beginning August 30, 2016, due to obesity, chronic kidney disease stage III, degenerative disc disease of the lumbar spine status-post surgeries, Crohn's disease, adjustment disorder with depressed mood, history of polysubstance abuse in sustained and full remission, and generalized anxiety disorder.  Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3.      On September 15, 2020, ALJ Stephen Cordovani held a telephonic hearing due to the COVID-19 pandemic at which Plaintiff—represented by counsel—and Vocational Expert Theresa Hopkins appeared and testified.  (R.[2] at 15, 39-80.)  At the time of the hearing, Plaintiff was 48 years old with a limited education (R. at 31).  She performed past relevant work as a home care attendant (performed at medium exertion) (R. at 31).

4.      The ALJ considered the case *de novo* and, on September 25, 2020, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 8, 9.)  Plaintiff did not file a response.  This Court then took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion is **denied**, and Defendant's Motion is **granted**.

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  <u>See</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a

---

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ's September 25, 2020, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9.      The five-step process is as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.      Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 30, 2016, the onset date.  (R. at 17.)  At Step Two, the ALJ found that Plaintiff has the following severe impairments:  obesity, chronic kidney disease stage III, degenerative disc disease of the lumbar spine status-post surgeries, Crohn's disease, adjustment disorder with depressed mood, history of polysubstance abuse in sustained and full remission, and generalized anxiety disorder.  Id. at 17-18.  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

12.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work (R. at 22) except Plaintiff can occasionally climb ramps, stairs, and balance.  Plaintiff can occasionally kneel, crouch, and crawl.  Plaintiff can never climb ladders, ropes, or scaffolds.  Plaintiff requires the ability to alternate sitting and standing at will while performing work activities.  Plaintiff requires an additional 5-6-minute bathroom break up to 1 per hour (i.e. up to 10% in an 8-hour workday).  Plaintiff can understand, remember, and carry out simple instructions and tasks.  Plaintiff also can work in a low stress work environment reflected by simple unskilled work, with no supervisory duties, no independent decision-making, no strict production quotas as with assembly line work, and minimal changes in work routine and processes (R. at 22).

13.     At Step Four, the ALJ found Plaintiff is unable to perform any past relevant work.  (R. at 31.)  At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 32.)  The ALJ posed

hypotheticals of a claimant like Plaintiff in her age, education, and work experience.  The expert opined that this hypothetical claimant could perform as a document preparer, addressing clerk, or telephone information clerk, all sedentary jobs (R. at 32). Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 33.)

14.    Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ erred in evaluating a treating psychiatrist's opinion and did not account for her needing time off work due to Crohn's disease.  For the reasons that follow, these arguments are not persuasive.

15.    Under the Social Security standards applicable for Title II and XVI applications after March 2017 for evaluating medical evidence, the agency considers the persuasiveness of a medical opinion, 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  This is determined by consideration of the supportability and consistency of the opinion as the most important factors, id. §§ 404.1520(c)(1)(2), (b)(2), 416.920c(c)(1), (2), (b)(2).  The ALJ must explain his approach with respect to supportability and consistency when considering a medical opinion, Melissa F. v. Comm'r, No. 20CV1363, 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021) (Carter, Mag. J.) (citing, e.g., 20 C.F.R. § 416.920c(b)). The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive that opinion will be, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The ALJ, however, is not required to articulate how each medical opinion is considered, 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

16.    First, Plaintiff's treating psychiatrist Dr. Jarod Masci opined in a mental residual functional capacity questionnaire (dated May 8, 2020) that she could not maintain competitive full-time employment given her marked and extreme limitations (Docket

No. 8, Pl. Memo. at 1, 11-16; R. at 781-89, 29).  Dr. Masci's prognosis was that Plaintiff's medical and mental health issues prevented her from doing any activities that required consistent attendance and more than minimal exertion.  The doctor concluded that "while ongoing psychiatric treatment can improve her mental health, remission is unlikely." (R. at 785.)  Plaintiff's anxiety, depression, and cognitive deficits diminish the likelihood of resuming her previous level of functioning (R. at 785), requiring "reasonably intensive support, requiring ongoing therapy, medication management, and monitoring for residual/chronic [symptoms] that continue to be significant and functionally impairing" (R. at 785).  Dr. Masci's prognosis concluded that due to chronic pain, physical limitations, social anxiety, depression, cognitive deficits, and difficulty maintaining a typical work schedule, it seemed "unlikely" Plaintiff would be able to resume work (R. at 785).

17.     The ALJ, however, found Dr. Masci's opinion was not persuasive (R. at 29-30).  Although Dr. Masci had a longitudinal treatment history with Plaintiff, the ALJ observed Dr. Masci's opinion was not consistent with the totality of evidence, including correlating clinical findings which reflect grossly normal mental status findings with stable symptoms and improvement in her mood (R. at 29).  The ALJ further found that Dr. Masci's findings were inconsistent with Plaintiff's activities of daily living including care for an ailing sister, shopping, and remodeling her house (R. at 29).  The ALJ faulted Dr. Masci for reaching the disability conclusion (a matter reserved by regulation for the Commissioner) (R. at 29).  The ALJ noted the inconsistency between that opinion and those of the state agency psychologist (R. at 87-88, 100-01, 610, 612, 29) and the consultative psychologist (R. at 598-603, 602, 29).

18.     Plaintiff argues that the ALJ erred in rejecting Dr. Masci's opinion in disregarding the four days or more a month she would be absent due to her ailments (Docket No. 8, Pl. Memo. at 16; see R. at 789).

19.     Generally, Defendant claims that substantial evidence supports the ALJ's findings (Docket No. 9, Def. Memo. at 13-16).   Defendant agreed with the ALJ that Dr. Masci's opinion was not persuasive because it was not well supported and was inconsistent with other substantial evidence (id. at 16-18).

20.     Dr. Masci's treatment notes indicated that Plaintiff denied symptoms of depression or anxiety, reporting that medication was helpful, and denied any new or ongoing concerns (R. at 974, 978, 982, 991, 995, 999).   These notes were made both before and after the May 2020 mental residual functional capacity questionnaire where Dr. Masci made more limited findings (R. at 783-89).

21.     State agency psychologist Dr. S. Juriga, Ph.D., evaluated Plaintiff in December 2018 and noted her daily activities (R. at 87-88).   Consulting evaluator Dr. Rebecca Billings, Ph.D., also noted Plaintiff's activities at that time (R. at 602).   Both observed that Plaintiff could dress herself, cook simple meals, shops once a month (R. at 601-02, 87-88).

22.     The ALJ thus had evidence in this record to support his inconsistency finding for Dr. Masci's May 2020 questionnaire.

23.     Therefore, this Court denies Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) on the consideration of Dr. Masci's opinion.

24.     Plaintiff next asserts that the ALJ did not account for her Crohn's disease and the time off that ailment mandates (Docket No. 8, Pl. Memo. at 1, 16-21).   She argues

that the RFC is specific but not supported by her testimony or medical evidence in this record (id. at 16).   The ALJ here erred in not making specific findings regarding the frequency and anticipated length of Plaintiff's bathroom breaks (id. at 18), see Lowe v. Colvin, No. 6:15CV6077, 2016 WL 624922, at *6 (W.D.N.Y. Feb. 17, 2016) (Telesca, J.). The RFC assessment of frequency and duration of bathroom breaks requires evidence on the record and not the ALJ's surmise (id.), see Joshua K. v. Comm'r, No. 19CV66, 2021 WL 235886, at *2 (W.D.N.Y. Jan. 25, 2021) (Geraci, C.J.); Cosnyka v. Colvin, 576 F. App'x 43, 46 (2d Cir. 2014) (summary Order).

25.    Crohn's disease is characterized by diarrhea, cramping, and loss of appetite and weight with local abscesses and scarring, Merriam Webster's Medical Desk Dictionary 152 (1993).

26.    Plaintiff cites the findings of her psychiatrist, Dr. Masci, on the effect of her need for frequent bathroom breaks (Docket No. 8, Pl. Memo. at 17, 20; cf. R. at 785).

27.    Plaintiff has not established Dr. Masci's expertise for Plaintiff's Crohn's disease as her psychiatrist.   From the doctor's mental residual functional capacity questionnaire, Dr. Masci reported that Plaintiff's physical limitations were apparent upon observation, presenting with abdominal guarding "which she reports [was] chronic pain associated with Crohn's disease and surgical adhesions" (R. at 785).   The doctor assessed Plaintiff's pain but not the time off required to deal with symptoms.   Instead, Dr. Masci concluded that her chronic pain (with other conditions) makes it difficult to maintain typical hours in a workday without specifically addressing Crohn's disease (R. at 785).

28.     Plaintiff also cites treatment notes from Dr. David Shulman, her treating physician, on December 2, 2019 (R. at 811, 810-13), noting assessment of her Crohn's disease.    During that routine physical which cited a history of Crohn's disease, Dr. Shulman found that Plaintiff had no change in her bowel habits (R. at 810). Dr. Shulman prescribed monthly use of a syringe and vitamin B12 (R. at 811), deemed a conservative treatment by the ALJ (R. at 26).

29.     The ALJ found Dr. Shulman's findings (regarding Plaintiff's back pain) was not consistent with contemporary treatment records and the doctor's limitations were based upon Plaintiff's subjective allegations that were not supported by his objective findings (R. at 29).   That opinion also was not consistent with the findings of the State agency consultant or consultant examiner (R. at 29).

30.     The ALJ also observed that Plaintiff was not compliant with her Crohn's biologic agents (R. at 24, 26, 907).

31.     The ALJ found in the RFC that Plaintiff required additional bathroom breaks (R. at 22), explaining that the time off-task for restroom breaks accommodates her symptoms (R. at 26, 27, 30).

32.     As Defendant observes (Docket No. 9, Def. Memo. at 18), the RFC is an administrative and not a medical finding, Curry v. Comm'r, 855 F. App'x 46, 48 n.3 (2d Cir. May 14, 2021) (summary Order), and need not track a particular medical opinion, Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary Order).

33.     The ALJ thus had sufficient basis to find in the RFC recognizing the symptoms for Crohn's disease in allotting additional break time.

34.     This Court also denies Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) on the consideration of her Crohn's disease.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      June 26, 2023
            Buffalo, New York


                              s/William M. Skretny
                              WILLIAM M. SKRETNY
                              United States District Judge